STEED *v.* AMERICAN NATIONAL BANK *et al.*

1. The provision of the act of 1896 (Acts 1896, p. 52), as changed by the act of 1897 (Acts 1897, p. 62), which declares that every building and loan association shall deposit with a legal depository of the State, or with a trust company, to be selected by the board of directors, seventy-

five per cent. of the mortgages or other securities received by it in the usual course of its business, in trust for all its members and creditors, does not operate to charge any particular mortgages or securities, not deposited, with a trust as against persons taking them bona fide and for value. Nor are persons dealing with such an association bona fide and for value put on inquiry, by reason of such law, to ascertain whether the association has complied with it.

2. The evidence authorized the decree which was rendered by the presiding judge, passing on questions of law and fact, without a jury, by consent.

AUGUST 18, 1911.

Intervention. Before Judge Felton. Bibb superior court. June 18, 1910.

*Robert L. Berner* and *Claud Estes,* for plaintiff.

*Lane & Park, W. J. Grace, T. E. Ryals, R. L. Anderson,* and *Guerry, Hall & Roberts,* for defendants.

LUMPKIN, J. Sanders and others filed an equitable petition against the Equitable Banking & Loan Company and others, for the purpose of having the assets of the company placed in the hands of a receiver and reduced to cash, and to have the fund used for the payment of debts. Among the defendants were the Home Savings Bank, which held a considerable amount of the securities of the company as trustee for its bondholders, and the American National Bank, which held certain of the assets of the company to secure an indebtedness to it. E. J. Steed filed an intervention, in which he claimed that neither the Home Savings Bank nor the American National Bank acquired any title, interest, or lien in, to, or upon the assets of the Equitable Banking & Loan Company. It appeared that originally the company was incorporated under the name of the Equitable Building & Loan Association, to do a building and loan business. Afterwards it changed its name to the Equitable Banking & Loan Company, and proceeded to discharge some of the functions of a bank. Steed deposited money with it as a savings bank, at interest. When the company failed, much the larger part of its indebtedness was on account of interest-bearing deposits. There were also about $1,200 of fixed-dividend stock, $1,700 of paid-up stock, and $5,940 of preferred stock. The regular building and loan instalment stock had been reduced to $849.11. The case was, by consent, submitted to the presiding judge, to pass on the issues both of law and fact without a jury. He held that the trustee of the bondholders and the American

National Bank were entitled to priority as to the assets held by them as security, to the extent of the indebtedness so secured. Steed moved for a new trial, which was refused, and he excepted.

1. The corporation involved in this case was born as a building and loan association, and died in the effort to be a bank. Its charter gave it no authority to do a banking business, nor could the superior court confer such power upon it. When it changed its name from "Building & Loan Association" to "Banking and Loan Company," the use of the word "Banking" was a misnomer.

The act of 1896 (Acts 1896, p. 52) provided, among other things, that every building and loan association should deposit with the treasurer of the State, or with a legally incorporated and organized trust company, to be selected by the board of directors, "in trust for all its members and creditors, seventy-five per cent. of the amount of all mortgages or other securities received by it in the usual course of its business." The act of 1897 (Acts 1897, p. 62) differed from that of 1896, by omitting the provision as to the treasurer, and inserting in lieu thereof, "one of the legal depositories of the State." This act required a deposit of seventy-five per cent. of the amount of such securities, but it did not itself select which securities should be deposited, or charge any particular securities with a trust, before their deposit, at least as to third parties acting bona fide, for value, and without notice. Persons dealing with such an association were not bound at their peril to see that it had made the deposit. In the absence of anything to show the contrary, it might be presumed that there had been such compliance. *Morgan* v. *Interstate Building & Loan Association,* 108 *Ga.* 185 (4), 187 (33 S. E. 964).

The theory that any person who dealt with the association and took any of its securities was put on notice or inquiry by the act itself, and held the securities charged with a trust, and that this was true even if they were transferred, for value and for an entirely different purpose, to a corporation with which they might have been deposited, is untenable. It is also not to be overlooked that the plaintiff in error did not deal with the debtor as a building and loan association, but as a bank of deposit, or savings bank, and his claim arose from a character of business which neither its charter nor the acts above cited contemplated.

2. The case was, by consent, submitted to the decision of the

presiding judge without a jury. The grounds of the motion for a new trial are really only elaborations of the position that, under the law, the evidence did not authorize the judgment or decree, and specifications of certain reasons why it was contended that this was true. The judgment or decree, as to questions of fact, stands like the finding of a jury. Upon a review of the whole case, we can not say that such judgment was erroneous.

It was contended that the contract with the trustee for the bondholders was not authorized. But it was executed in the name of the company, by its president and its treasurer, apparently with a seal attached; and while the minutes of the company did not show direct authority for the contract made, there were various entries tending in that direction. In the minutes of the directors appeared the statement that a committee was appointed to prepare "the copy" for an issue of bonds. At a later meeting, "The issue of $25,000 of 7% gold bonds was approved, to be secured by mortgages and real estate held by the company." Again, there appeared an entry that "it was deemed an opportune time to issue some 7% gold bonds, authorized some time ago, and the president was authorized to advertise the same for sale." Incorporated in the minutes were monthly statements made by the president to the board of directors, which showed receipts from the bonds issued. Still later was an entry, that, "On motion, the president was authorized to make other banking arrangements with such institutions as will offer the best accommodations;" and that the president was authorized to make a loan of $5,000 specified, "and also such loans as might be needed." The original trustee for the bondholders failed, and a similar agreement was made with a second institution. This was known to all of the directors, and the bonds were issued under the trust contract, and certified by the trustee. That the contract and the transfers upon the security deeds placed in the hands of the trustee were not recorded did not render the transaction invalid as against the plaintiff in error. The grounds of the motion for a new trial did not expressly make the point that a transfer of a security deed does not carry with it a transfer of title to the land. But the notes secured by them were transferred to the trustee, and, under the trust contract, the trustee had at least an equitable lien, and a right superior to that of the plaintiff in error.

The transfer of certain securities to a bank for a loan was also attacked for want of authority on the part of the president of the association to contract the debt and give the security, and on the ground that the loan was made after the insolvency of the association, and that the bank had notice thereof. In the light of the facts above recited and of the other evidence in the record, there was no error in holding that the bank had the right to realize from such securities the amount due to it.

Upon the whole case, the presiding judge did not err in the decree which he entered.

*Judgment affirmed. Beck, J., absent. The other Justices concur.*